UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JANA L. RAGONESI,<br><br>　　　　　　　　　　　Plaintiff(s),<br><br>　　v.<br><br>GEWICO CASUALTY COMPANY, dba GEICO,<br><br>　　　　　　　　　　　Defendant(s). | Case No. 2:20-CV- 1280 JCM (EJY)<br><br>ORDER |

Presently before the court is defendant GEICO Casualty Company's ("Geico") motion to dismiss plaintiff Jana Ragonesi's extra-contractual claims. (ECF No. 6). Also before the court is Geico's motion to sever/bifurcate and stay these claims.[1] (ECF No. 7). Ragonesi responded in opposition to both motions (ECF Nos. 9, 10) to which Geico replied. (ECF No. 11).

I.  **BACKGROUND**

This is a case about an insurer allegedly mishandling an underinsured/uninsured motorist ("UIM") claim. Geico policyholder Jana Ragonesi alleges the following:

On or about August 26, 2015, Ragonesi was involved in a serious car crash due to the negligence of non-party underinsured driver Kathryn Lantz. (ECF No. 1-1 ¶ 8). Ragonesi suffered serious and permanent injuries. (*Id.* ¶ 9). Lantz had a Geico auto insurance policy with limits of $100,00 per person and $300,000 per accident. (*Id.* ¶ 10). Ragonesi also had a

---

[1] Geico's motions at ECF Nos. 6 and 7 are identical and request relief in the alternative to one another.

**James C. Mahan**
**U.S. District Judge**

Geico auto insurance policy with UIM coverage of $300,000 per person and $500,000 per accident that was in full force and effect at the time of the crash.  (*Id.* ¶ 7).

On or about February 8, 2017, Geico tendered Lantz's $100,000 policy limit to Ragonesi which did not fully cover her injuries and medical expenses.  (*Id.* ¶ 13).  On or about September 22, 2017, Ragonesi submitted to Geico her medical records and bills and demanded the full UIM policy limit.  (*Id.* ¶ 16).  As of the date of Ragonesi's request, her total known medical specials totaled $228,465.02.  (*Id.* ¶ 17).  She continued to provide Geico with supplemental medical records and bills as she underwent more treatment.  (*Id.* ¶ 18).

On January 26, 2018, Geico hired Dr. Jeffrey Wang to review Ragonesi's medical records.  (*Id.* ¶ 33).  Upon Ragonesi's information and belief, "Dr. Wang is routinely hired and used by Geico" and his medical opinions are "consistent with Geico's ulterior financial interest in not paying the full value of the claim."  (*Id.* ¶¶ 40, 32).  Dr. Wang opined that "any medical treatment beyond six (6) months of chiropractic care for her thoracic and lumbar spine and the initial radiological images of her lumbar spine that Plaintiff underwent was excessive and that none of Plaintiff's cervical spine complaints were related."  (*Id.* ¶ 33).

Based on Dr. Wang's review, Geico determined that Ragonesi's claim was worth $42,143.42 and that she was fully compensated by Lantz's $100,000 policy limit tender and her own medpay of $100,000.  (*Id.* ¶ 34).  Geico made this determination despite its previous determination that her injuries were serious enough to tender Lantz's $100,000 policy limit.  (*Id.* ¶ 35).  In relying solely on Dr. Wang's review, Geico disregarded the medical opinions submitted by Ragonesi's medical providers, including "a neurosurgeon who opined that Plaintiff was seriously injured and will need continued therapies, pain management, medical visits and medication, for her life expectancy of an additional 24.6 years."  (*Id.* ¶ 32).  All in all, Geico never conducted a "full, fair and unbiased investigation" and did not give equal consideration to Ragonesi's interests and its own interests.  (*Id.* ¶¶ 29–30).

After Ragonesi received Dr. Wang's report and Geico's refusal to provide additional UIM benefits, she requested "a detailed description of the basis for its evaluation for UIM

James C. Mahan
U.S. District Judge

benefits, as well as Dr. Wang's qualifications, his relationship with [Geico] and Dr. Wang's potential for bias and prejudice in personal injury matters." (*Id.* ¶ 38). Geico responded that Dr. Wang was "a truly neutral examiner" and did not provide his fee amount or the number of IMEs he has conducted. (*Id.* ¶ 39). As of April 2020, Ragonesi's total known medical specials totaled over $357,706. (*Id.* ¶ 19).

Geico now moves to dismiss Ragonesi's bad faith, unfair claims practices, and negligence and/or intentional misrepresentation claims or, in the alternative, sever/bifurcate and stay these claims. (ECF No. 6).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires every complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Although Rule 8 does not require detailed factual allegations, it does require more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In other words, a complaint must have *plausible* factual allegations that cover "all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation omitted) (emphasis in original); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The Supreme Court in *Iqbal* clarified the two-step approach to evaluate a complaint's legal sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678–79. Legal conclusions are not entitled to this assumption of truth. *Id.* Second, the court must consider whether the well-pleaded factual allegations state a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the court can draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. When the allegations have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

**James C. Mahan**
**U.S. District Judge**

The court typically may not consider material beyond the pleadings to evaluate a complaint's legal sufficiency under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d). But the court can consider exhibits attached to the complaint or matters properly subject to judicial notice under Federal Rule of Evidence 201. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Under the incorporation by reference doctrine, the court can also consider documents whose contents are alleged in a complaint and whose authenticity no party questions but which are *not* attached to the complaint. *Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1043 (9th Cir. 2015).

### III.  DISCUSSION

**A.  Claim #2—Breach of Covenant of Good Faith/Insurance Bad Faith**

The implied covenant of good faith and fair dealing arises out of every contractual relationship and "prohibits arbitrary or unfair acts by one party that work to the disadvantage of the other." *Nelson v. Heer*, 163 P.3d 420, 427 (Nev. 2007). Alongside this contractual relationship is a special relationship between an insurer and its insured—akin to a fiduciary relationship—which can give rise to tort liability. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 325–26 (Nev. 2009). The insurer had a duty to defend and a duty to indemnify and generally must, at a minimum, "equally consider the insured's interests and its own." *Id.* at 326.

To state a claim for a contractual breach of the implied covenant, the insured must plausibly allege that: (1) the plaintiff and defendant were parties to a contact; (2) the defendant owed plaintiff a duty of good faith and fair dealing; (3) the defendant breached the duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *See Perry v. Jordon*, 900 P.2d 335, 338 (Nev. 1995).

A contractual breach of the implied covenant cannot be based on the same conduct as a breach of contract. *Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020). The two claims can be alternative theories of liability but "all elements of each cause of action must be properly pleaded." *Id.* (internal citations and quotations omitted). A

breach of the implied covenant claim requires "literal compliance with the terms of the contract." *Id.* (internal citations and quotations omitted).

To state a claim for a tortious breach of the implied covenant, the insured must plausibly allege that: (1) an insurer denied a claim; (2) without any reasonable basis; and (3) with the knowledge or reckless disregard of any reasonable basis to deny coverage. *See Falline v. GNLV Corp.*, 107 Nev. 1004, 1009 (1991); *see also Powers v. United Serv. Auto Ass'n*, 962 P.2d 596, 604 (Nev. 1998); *Am. Excess Ins. Co. v. MGM Grand Hotels, Inc.*, 729 P.2d 1352, 1354–55 (Nev. 1986) (per curiam). That is, bad faith requires an insurer's denial of benefits to be both objectively and subjectively unreasonable. *Rivas v. Gov't Employees Ins. Co.*, No. 2:20-cv-306-JCM-NJK, 2020 WL 3128596, at *2 (D. Nev. June 12, 2020). And an insurer's honest mistake, bad judgment, or negligence is not enough. *See Miller*, 212 P.3d at 330.

A bad faith claim is subject to dismissal if the insurer shows a genuine dispute as to coverage, *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 669–70 (9th Cir. 2003) (interpreting bad faith under California law), because, again, "if the insurer had a reasonable basis to deny coverage, there can be no finding of bad faith." *Sherwin v. Infinity Auto Ins. Co.*, 2013 WL 5918312, *3 (D. Nev. Oct. 31, 2013).

Put plainly, an insurer's knowingly "unreasonable denial or delay in payment of a valid claim" IS grounds for a bad faith claim. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). An insurer's failure to adequately inform the insured about a reasonable settlement offer can also be grounds for a bad faith claim. *See Miller*, 212 P.3d at 325. In contrast, an "insurer does not act in bad faith merely because it disagrees with the claimant's estimation of his injuries or delays paying out benefits until it receives relevant documents or expert opinions." *Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1055 (D. Nev. 2017).

**1. Ragonesi's Bad Faith Claims are not Premature**

Geico moves to dismiss Ragonesi's bad faith claims as premature, arguing that her breach of contract claim must be resolved first. (ECF No. 6 at 17–19). That is, Ragonesi

1  must first establish a legal entitlement to the UIM benefits under her policy.  (*Id.* at 18–19
2  (citing *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789 (1993), and *Pulley v. Preferred Risk*
3  *Mut. Ins. Co.*, 897 P.2d 1101 (Nev. 1995)).

4  "The Supreme Court of Nevada [in *Albert H. Wohlers & Co. v. Bartgis*, 969 P.2d 949,
5  955 n.2 (Nev. 1998),] held that a plaintiff does not need to establish success on a contractual
6  claim before proceeding with a bad-faith claim.  To find otherwise would require a plaintiff
7  to commence two separate lawsuits even if the facts establish that the insurer breached the
8  insurance contract and acted in bad faith within the same factual sequence."  *Aiello v. Geico*
9  *Gen. Ins. Co.*, 379 F. Supp. 3d 1123, 1129 (D. Nev. 2019); *see also Oliver v. Geico Gen. Ins.*
10 *Co.*, No. 2:15-cv-204-JCM-CWH, 2015 WL 4064748, at *2 (D. Nev. July 2, 2015)
11 (discussing *Albert H. Wohlers*).

12 Judge Jones came to the same conclusion after a close examination of *Pemberton*,
13 *Pulley*, and the later-decided *Albert H. Wohlers*.  *Schmall v. Gov't Employees Ins. Co.*, No.
14 2:16-cv-00073-RCJ, 2016 WL 951259, at *2–3 (D. Nev. Mar. 9, 2016) (declining to
15 "dismiss, sever, or stay [a] bad faith claim based on prematurity").  What's more is that when
16 Ragonesi's complaint is construed in a light most favorable to her, her claims all arise out of
17 "the same factual sequence."  *Aiello*, 379 F. Supp. 3d at 1129; *see also Tracey v. Am. Family*
18 *Mut. Ins. Co.*, No. 2:09-cv-01257-GMN, 2010 WL 3613875, at *5 (D. Nev. Sept. 8, 2010).
19 Therefore, Ragonesi's bad faith claims are not dismissed based on prematurity.

20 **2.  Ragonesi Fails to State a Bad Faith Claim**

21 As to a contractual breach of the implied covenant, Ragonesi does not "adequately
22 allege literal compliance with the contractual terms [ ] and [ ] uses the same allegations for
23 both breach of contract and breach of the covenant of good faith and fair dealing."  *Jimenez*,
24 448 F. Supp. 3d at 1113 (dismissing bad faith claims); *see also Stebbins v. Geico Ins.*
25 *Agency*, No. 2:18-cv-00590-APG-GWF, 2019 WL 281281, at *3 (D. Nev. Jan. 22, 2019)
26 (same). (*Compare* ECF No. 1-1 ¶ 20, *with id.* ¶¶ 24–25 ("Geico, by failing to reasonably and
27 in good faith evaluate said claim, also breached the inherent duty of good faith and fair
28

**James C. Mahan**
**U.S. District Judge**

- 6 -

dealing it owed to Plaintiff.")). Therefore, Ragonesi's contractual breach of the implied covenant claim is dismissed without prejudice.

As to a tortious breach of the implied covenant, Ragonesi alleges nothing more than a genuine dispute over valuation based on dueling medical experts. Geico's reliance on its own medical expert over the insured's medical expert does not evince bad faith. *McCall v. State Farm Mut. Auto. Ins. Co.*, No. 2:16-cv-01058-JAD-GWF, 2018 WL 3620486, at *4 (D. Nev. July 30, 2018), *aff'd*, 799 F. App'x 513 (9th Cir. 2020) (unpublished); *Amini v. CSAA Gen. Ins. Co.*, No. 2:15-cv-0402-JAD-GWF, 2016 WL 6573949, at *4 (D. Nev. Nov. 4, 2016); *Flonnes v. Prop. & Cas. Ins. Co. of Hartford*, No. 2:12-cv-01065-APG, 2013 WL 3109381, at *4 (D. Nev. June 17, 2013).

An insurer's duty to equally consider the insured's interests alongside its own interests does not require it to give equal consideration to "the insurer's and the insured's **competing medical data**." *Flonnes*, 2013 WL 3109381, at *5. In fact, "the use of an independent medical expert to review a case" may even evince good faith. *Schmall*, 240 F. Supp. 3d at 1097 (citing *Flonnes*, 2013 WL 3109381, at *4 ("In light of Hartford's hiring of a medical expert to review and affirm the findings of its adjusters, the court cannot reasonably infer the subjective element of bad faith.")).

But "expert testimony does not automatically insulate insurers from bad faith claims based on biased investigations." *Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 996 (9th Cir. 2001) (holding that the genuine dispute doctrine under California law is "not limited to purely legal disputes"). There can be "several circumstances where biased investigation claims could go to a jury" which include the insurer dishonestly selecting its experts, the insurer's experts being unreasonable, or failing to conduct a thorough investigation. *Id.*

While Ragonesi contends in her opposition to dismissal that Dr. Wang is "biased" and that "GEICO's money is the motivating factor to Dr. Wang's opinions," there is not enough factual support in her complaint for these allegations to be plausible. (ECF No. 9 at 16). *Cf. Schmall*, 240 F. Supp. 3d at 1097 (dismissed a bad faith claim because "[p]laintiff does not allege that [Geico] admitted or should have been able to tell from Dr. Wang's independent

**James C. Mahan**
**U.S. District Judge**

- 7 -

evaluation that [p]laintiff's injuries were in fact caused by the May 2014 accident and not the prior accident" [and] "[p]laintiff has not alleged that Dr. Wang is biased or otherwise interested in the matter.").

Because the court cannot reasonably infer the subjective element of bad faith from this genuine dispute over valuation based on dueling medical experts, Ragonesi's tortious breach of the implied covenant claim is dismissed without prejudice as well.

### B. Claim #3—Violations of Nevada's Unfair Claims Practices Act

Nevada's Unfair Claims Practices Act, Nev. Rev. Stat. § 686A.310 et seq., provides a private right of action for insureds against insurers and imposes liability for enumerated unfair claims practices. *See Hart v. Prudential Prop. & Cas. Ins. Co.,* 848 F. Supp. 900, 903 (D. Nev. 1994). Unlike bad faith claims, the statute addresses how an insurer handles an insured's claim whether or not the claim is denied. *Zurich Am. Ins. Co. v. Coeur Rochester, Inc.*, 720 F. Supp. 2d 1223, 1236 (D. Nev. 2010) (internal citation and quotations omitted).

Ragonesi mainly recites the statutory language of subsections (1)(c), (1)(e), and (1)(f). (ECF No. 1-1 ¶¶ 48, 49, 50). She makes no factual allegations of Geico's failure to adopt or implement reasonable standards for claim processing, a would-be violation of subsection (1)(c). (*Id.* ¶ 48). And as currently pleaded, this case appears to be nothing more than a genuine dispute over valuation based on dueling medical experts, meaning that "liability never became reasonably clear" as required under subsection (1)(e). (*Id.* ¶ 49). And finally, "a claim that a plaintiff has been made to institute litigation under subsection (1)(f) appears to be a fee-shifting provision depending on the success of other underlying claims and is better characterized as a remedy." *Schmall*, 240 F. Supp. 3d at 1098.

Therefore, Ragonesi's claims for violations of subsections 1(c) and 1(e) are dismissed without prejudice and her claim for a violation of subsection 1(f) is dismissed with prejudice insofar as it is asserted as an independent claim for relief.

### C. Claim #4—Negligent and/or Intentional Misrepresentation

Ragonesi does not rebut Geico's contention that Nevada does not recognize a negligence claim by an insured against an insurer that is duplicative of a breach of contract or

bad faith claim. (*Compare* ECF No. 6 at 14–18, *with* ECF No. 9 at 5–6). That is because "the [insurer's] duties in [these] situations are defined by the contract and by the law on insurance bad faith, not by the law of negligence." *Williams v. Travelers Home & Marine Ins. Co.*, No. 2:16-cv-01856-APG-CWH, 2017 WL 937718, at *4 (D. Nev. Mar. 8, 2017) ("A negligence claim is particularly inappropriate when it is duplicative of a bad faith claim."); *see also Sierzega v. Country Preferred Ins. Co.*, No. 2:13-cv-1267-JCM-NJK, 2014 WL 1668630, at *5 (D. Nev. Apr. 25, 2014), *aff'd*, 650 F. App'x 388 (9th Cir. 2016).

Here, Ragonesi's negligent and/or intentional misrepresentation claim is predicated on the same factual allegations as her bad faith claims. And the claim as currently pleaded is mostly a recitation of the legal elements which are not even separate and distinct from the parties' contractual relationship. (ECF No. 1-1 ¶¶ 52–56 ("[B]y failing to ensure that the insurance contract adequately protected Plaintiff prior to inducing Plaintiff to enter into the contract, Defendant, GEICO, breached its duty to the Plaintiff")). Therefore, Ragonesi's fourth claim for relief is dismissed with prejudice.

### D. Ragonesi's Request for Leave to Amend

Ragonesi asks for leave to amend her complaint if this court rules that she fails to state a claim for relief. (ECF No. 9 at 8 (noting that this action was originally filed in Nevada state court which has a notice pleading rule)). District courts must freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This policy is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quotation omitted).

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks omitted). Amendment is futile only if no set of facts can be proven under the amendment that would constitute a valid and sufficient claim. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

James C. Mahan
U.S. District Judge

Amendment would not be futile here. As discussed, Ragonesi does not need to prevail on her breach of contract claim before proceeding with her bad faith claims. *See supra* Section A.1. And the use of a medical expert to review medical records does not insulate insurers from any and all bad faith claims. *See supra* Section A.2. Therefore, Ragonesi is granted leave to amend her second and third claims for relief consistent with the foregoing.

### E. Geico's Motion to Sever/Bifurcate and Stay Ragonesi's Extra-Contractual Claims

Geico asks the court to sever/bifurcate and stay Ragonesi's extra-contractual claims pending resolution of the potentially dispositive breach of contract claim. (ECF No. 6 at 19–20). Geico worries that the jury would be unduly prejudiced and confused if it evaluated coverage issues and inflammatory evidence of bad faith together. (*Id.*).

Federal Rule of Civil Procedure 42(b) gives the court the discretion to order a separate trial of any claim when separation is in the interest of judicial economy, will further the parties' convenience, or will prevent undue prejudice. Fed. R. Civ. P. 42(b). Bifurcation is particularly appropriate when resolution of a single claim could be dispositive of the entire case, as for example, "when the bad faith claim is predicated on whether the alleged claim is even covered by the policy." (ECF No. 9 at 14). *See Drennan v. Maryland Cas. Co.*, 366 F. Supp. 2d 1002, 1007 (D. Nev. 2005).

The court will follow the lead of other courts in this district which overwhelmingly deny insurers' requests to bifurcate bad faith and contractual claims of this kind. *See Stebbins*, 2019 WL 281281, at *3; *Alele*, 420 F. Supp. 3d at 1129; *Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1128 (D. Nev. 2019); *Oliver*, 2015 WL 4064748, at *2; *Tracey*, 2010 WL 3613875, at *5. *But see Drennan*, 366 F. Supp. 2d at 1007 (granting bifurcation of trial but not discovery).

Ragonesi more persuasively argues that her claims are "inextricably intertwined and separating discovery would unnecessarily prolong the process and waste judicial resources" and that "almost all of the witnesses will be the same" for all her claims. (ECF No. 9 at 13–

**James C. Mahan**
**U.S. District Judge**

- 10 -

17).  The "terms of the UIM policy are not [at] issue" and "the only factual dispute related to the cause of the injuries and Geico's conduct in concluding they were not caused by this crash."  (*Id.* at 17).  C*f. Tracey*, 2010 WL 3613875, at *7 (denying bifurcation because "the only factual dispute relates to the cause of the injuries and the adjuster's conduct in concluding that they were not caused by this accident.").

Any concerns about juror prejudice or confusion can be addressed through jury instructions and counsels' opening statements and closing arguments.  *Aiello*, 379 F. Supp. 3d at 1129.  And bifurcation "would require the parties to present much of the same evidence twice, have witnesses testify twice, make many of the same arguments twice, and pay the cost of litigation twice."  *Alele*, 420 F. Supp. 3d at 1130.  Geico's motion to sever/bifurcate and stay Ragonesi's extra-contractual claims is denied.

## IV.  CONCLUSION

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Geico's motion to sever/bifurcate and stay the extra-contractual claims (ECF No. 7) be, and the same hereby is, DENIED.

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Geico's motion to dismiss (ECF No. 6) be, and the same hereby is, GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Ragonesi's second claim for relief—breach of covenant of good faith/insurance bad faith—is dismissed with leave to amend.  Ragonesi's third claim for relief—violations of Nevada's Unfair Claims Practices Act—is dismissed with leave to amend consistent with the foregoing.  Ragonesi's fourth claim for relief—negligent and/or intentional misrepresentation—is dismissed with prejudice.

IT IS FURTHER ORDERED that Ragonesi may file an amended complaint, consistent with the foregoing, within twenty-one (21) days from the entry of this order.

DATED December 23, 2020.

_____
UNITED STATES DISTRICT JUDGE